**ADANTÉ D. POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
**TY L. CLARKE, ESQ., SBN 339198**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert St., Suite 208,
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LawyersFTP.com
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com
Email: TClarke@LawyersFTP.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STARQUETTA METOYER, individually and as successor-in-interest to Decedent SHAUNDALE BOOKER JR.; | Case No.: |
| Plaintiff, | COMPLAINT FOR DAMAGES (42 U.S.C. § 1983) |
| v. | |
| COUNTY OF RIVERSIDE, a municipal corporation; VACHE CHAKMAKIAN, an individual; and DOES 1-50, inclusive. | JURY TRIAL DEMANDED |
| Defendants. | |

**INTRODUCTION**

1.      Shaundale Booker, Jr. is yet another tragic, preventable death in Riverside's Cois M. Byrd Detention Center. When Shaundale was taken into custody at the jail as a pre-trial detainee on December 9, 2021, he was 19 years old and had never been in jail before. He had no way to know he was going to become another victim of what the New York Times recently deemed "one of America's deadliest jail systems".[1]

2.      Riverside County Sheriff's Office deputies working in the jail inexplicably elected to house Shaundale with a violent murder suspect who had a long record of prior jail infractions and was classified as a high security risk. This was an objectively unreasonable decision that ultimately cost Shaundale his life.

3.      In the following months, Shaundale's cellmate sexually assaulted him on at least one occasion. The cellmate was human immunodeficiency virus (HIV) positive and transmitted it to Shaundale through the sexual assault. Two years later, Shaundale was dead as a result of complications from HIV.

4.      The great advances in medicine and science over the past decades mean HIV is no longer a death sentence when properly treated. However, the County's jail medical staff provided no such treatment. Shaundale submitted numerous medical treatment requests which were ignored. Shaundale showed worrying symptoms of a weakened immune system, continued to make medical requests but continued to be ignored. Even Shaundale's requests for bloodwork to be done took months to be addressed.

5.      When Shaundale was finally diagnosed with HIV by outside medical staff, Defendant Vache Chakmakian—a jail doctor—elected to put off Shaundale's HIV treatment for

---

[1] https://www.nytimes.com/2024/11/01/us/california-jail-deaths-riverside-county.html

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

two weeks. Sadly, Shaundale did not have two weeks to wait to begin treatment. In that time, he was rushed from the jail to the hospital, where he ultimately and tragically died on December 15, 2023.

## JURISDICTION

6.    This action arises under Title 42 of the United States Code, Section 1983. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The unlawful acts and practices alleged herein occurred in Murrieta, California in Riverside County which is within this judicial district.

## PARTIES

7.    Decedent SHAUNDALE BOOKER JR. (hereinafter "Decedent") was an adult, and died intestate, unmarried, and was the biological son of Plaintiff STARQUETTA METOYER.

8.    Plaintiff STARQUETTA METORYER (hereinafter "Plaintiff" or "Starquetta") is a competent adult, a resident of California, and a citizen of the United States. Plaintiff brings these claims individually on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, and federal civil rights law. Also, Plaintiff bring her claims on behalf of Decedent SHAUNDALE BOOKER JR. under Code of Civil Procedure §§377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. The wrongful death and survival claims survive the death of SHAUNDALE BOOKER JR.; both arise from the same wrongful act or neglect of another; and such claims are properly joined pursuant to California Code of Civil Procedure §377.62.

9.    Defendant COUNTY OF RIVERSIDE (hereinafter "Defendant COUNTY") is and at all times herein mentioned is a municipal entity duly organized and existing under the laws of the State of California that manages and operates the Riverside County Sheriff's Office and the Cois M. Byrd Detention Center.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

10.     Defendant VACHE CHAKAMKAIN is and at all times herein mentioned was a medical doctor contracted with the Defendant COUNTY to serve as the Detention Health Physician in Defendant COUNTY jails.

11.     Plaintiffs are ignorant of the true name and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sues said defendants by such fictious names. Defendants DOES 1 through 50 are employees of Defendants COUNTY, including but not limited to Riverside County Sheriff's Office law enforcement officers and medical staff working within Cois M. Byrd Detention Center. Plaintiffs will amend this complaint to allege the true names and capacities of Defendants DOES 1 through 50 when ascertained. Plaintiffs believe and allege that each of the Defendant DOES 1-50 are legally responsible and liable for the incident, injuries, and damages hereinafter set forth. Each Defendant DOES 1 through 50 proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy, and failure to provide constitutionally-adequate medical care. Each Defendant DOE 1 through 50 is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment ownership, entrustment, custody, care or control or upon any other act or omission. Plaintiffs will seek leave to amend this complaint in order to name Defendants DOES 1 through 50 when ascertained.

12.     Nominal Defendant SHAUNDALE BOOKER SR. is the biological father of DECEDENT.

13.     In doing the acts and/or omissions alleged herein, Defendants DOES 1 through 50 acted within the course and scope of their employment for Defendant COUNTY

14.     In doing the acts and/or omissions alleged herein, Defendants DOES 1 through 50 acted under color of authority and/or under color of law.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

15.     Due to the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

16.     Plaintiff filed a timely government claim with the Defendant COUNTY on June 14, 2024. The Defendant COUNTY rejected Plaintiff's claim on July 10, 2024.

## FACTUAL ALLEGATIONS

17.     On December 9, 2021, Plaintiff's Decedent Shaundale Booker Jr. (hereinafter "Shaundale") was taken into the custody of the Defendant County of Riverside (hereinafter "Defendant County") as a pre-trial detainee at Cois M. Byrd Detention Center[2]. Shaundale was 19 years old and had never been to jail. He was also mentally disabled as a result of traumatic brain injury that he suffered at two years old.

18.     In the months prior to his detention, Shaundale had been diagnosed with pericarditis and myocarditis. The diagnosing doctors at Loma Linda University Health System in Loma Linda, California, told Shaundale and his mother, Plaintiff Starquetta Metoyer (hereinafter "Starquetta"), that the conditions were not life-threatening. The doctors prescribed Shaundale heart medication to treat the conditions.

19.     On information and belief, yet-to-be-identified Riverside County Sheriff's Deputies (who are identified in this lawsuit as Defendants DOES 1-50 and/or Defendant Doe Deputies) referred to and who were serving as classification/housing deputies in Cois M. Byrd Detention Center, recklessly elected to house Shaundale in the same cell as individual in jail on murder charges. On information and belief, this individual was classified as a high security risk due to previous incidents in the jail and had over 100 "points" on his record. Points are used to calculate a detainee's infractions in jail; the higher the point level, the more infractions the detainee has

---

[2] On information and belief, the Cois M. Byrd Detention Center is alternatively referred to as the Southwest Detention Center.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

committed. On information and belief, this individual also had human immunodeficiency virus (HIV).

20.     On information and belief, Shaundale was sexually assaulted by his cell mate on at least one occasion, and he contracted HIV because of the sexual assault.

21.     On information and belief, Defendant Doe Deputies were aware that Shaundale had been sexually assaulted by his cellmate and eventually moved Shaundale to a new cell after Shaundale made several complaints about his cellmate. On information and belief, these deputies never notified medical staff nor took any other affirmative steps to identify or treat any potential medical issues (such as the contraction of sexually transmitted diseases) from the sexual assault.

22.     Shaundale was detained at the Cois M. Byrd Detention Center from December 9, 2021, until his death on December 15, 2023. During that time, Shaundale experienced numerous health issues that worsened throughout his detention. These concerns included chronic headaches, shortness of breath, a rapid heartbeat, and burning sensations in his eyes. Shaundale frequently submitted medical grievances documenting these health issues and requesting medical treatment. At the time, he was denied medical treatment entirely, and at others, he was given inadequate treatment, such as Motrin and water for the chronic side effects of his deteriorating immunite system.

23.     Shaundale's persistent and varied symptoms should have raised concerns with jail medical staff that Shaundale's immune system was becoming compromised.

24.     Early in 2023, Shaundale experienced severe cold symptoms and a sore throat that lasted for weeks. Despite Shaundale requesting medical care multiple times, jail medical staff did nothing to treat this clear manifestation of a weakened immune system despite significant training on the signs and symptoms of a person that had contracted HIV and was develops AIDS.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

25.     On information and belief, Shaundale became concerned that he was losing weight in that same time period. On January 3, 2023, he requested that medical staff perform a weight check on him. On February 6, 2023, he again requested that medical staff check his weight along with his blood pressure.

26.     In the spring of 2023, Shaundale began experiencing rectal bleed. On information and belief, this may have been caused by other detainees' continuing sexual assaults of Shaundale. The rectal bleeding continued for several months while Shaundale submitted numerous medical grievance forms. On April 29, 2023, he requested stool softener and reported he may have a hemorrhoid. On June 25, he again requested stool softener and medicinal cream for his buttocks.

27.     On August 21, 2023, Shaundale submitted a medical request regarding "two bumps, one in [his] armpit and the other one on [his] neck and both cause pain". He further stated that these bumps were not pimples and that he was requesting that medical staff look into them. On information and belief, these bumps were likely inflamed lymph nodes; lymphoma and other issues with lymph nodes are more likely to occur in individuals with HIV.[3] On August 27, 2023, Shaundale submitted another medical request form asking for bloodwork to be done in regards to these bumps.

28.     There is no evidence that jail medical staff addressed these grievance forms that Shaundale submitted.

29.     In September 2023, Shaundale became increasingly sick and submitted requests for medical treatment. On September 24, 2023, he reported being congested and having phlegm in his throat. Defendant Doe Deputies and jail medical staff ignored these requests for approximately two months.

---

[3] https://www.cancer.gov/types/lymphoma/patient/aids-related-treatment-pdq

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

30.     On October 1, 2023, Shaundale submitted another medical request from asking for bloodwork to be done.

31.     On October 2, 2023, Shaundale made a verbal request to medical staff to perform the bloodwork. According to jail medical records, he reported feeling cold all the time and expressed concerns about being anemic.

32.     It is unclear when this bloodwork was finally done. However, on October 16, 2023, jail medical staff reviewed the bloodwork results with Shaundale and noted that they showed abnormal results regarding Shaundale's iron levels and blood cell counts. Abnormal blood cell counts are common among individuals with HIV.[4]

33.     On October 17, 2023, a yet-to-be-identified jail doctor reviewed the abnormal test results. Instead of further investigating these concerning bloodwork results or even ordering a test to determine if Shaundale had HIV, this doctor simply requested that the results be attached to Shaundale's next cardiology appointment.

34.     On October 24, 2023, Shaundale submitted another medical request asking for treatment for a suspected nasal infection—yet another sign of a weakened immune system.

35.     On November 9, 2023, a yet-to-be-identified jail doctor reviewed Shaundale's bloodwork and ordered additional testing to be done. Inexplicably, this doctor did not order for an HIV test to be done.

36.     Finally, on or about November 23, 2023, Shaundale was taken by ambulance to a nearby hospital for chest pain and heart palpations. This doctor informed Shaundale that he had contracted HIV and asked him if he already knew. When Shaundale said he did not know, the doctor expressed surprise that the jail medical staff had not already told him. The doctor's

---

[4] https://www.aidsmap.com/about-hiv/blood-problems-and-hiv

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

comments suggest that jail medical staff were aware that Shaundale was HIV positive well before he did yet failed to treat him.

37.     On or before November 26, 2023, Shaundale returned to the jail. The jail medical staff was aware that Shaundale had been diagnosed with HIV.

38.     Defendant Vache Chakmakian—a medical doctor working at the jail—ordered Shaundale to follow up with infectious disease doctors in two weeks. Defendant Chakmakian's decision to delay Shaundale's follow up regarding his HIV diagnosis is inexplicable, as it is well known in the medical field that people with HIV should be started on medication "as soon as possible after an HIV diagnosis".[5]

39.     On information and belief, Defendant Chakmakian nor any other jail medical staff **never** prescribed Shaundale anti-retroviral therapy medications nor any other medications to treat HIV.

40.     Shaundale's health continued to worsen in jail and he was taken back to the hospital on November 30, 2023. On information and belief, Shaundale remained at the hospital until December 15, 2023, when he passed away.

41.     Shaundale's mother, Plaintiff Starquetta Metoyer, arranged for a private autopsy to be performed on Shaundale. In this autopsy, performed by Dr. Duc Van Duong on December 28, 2023, Dr. Duong determined that Shaundale's cause of death was HIV complications.

42.     Despite Shaundale's repeated self-advocacy while detained in the custody of the Defendant County and frequent grievances outlining clear symptoms consistent with HIV, Ms. Metoyer will now be forced to live the rest of her life without her beloved son because of the Defendant County and DOES 1-50's repeated failures to care for Shaundale.

---

[5] https://hivinfo.nih.gov/understanding-hiv/fact-sheets/hiv-treatment-basics

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

***Monell* Facts**

43.     In 2022, the Defendant County had 18 in-custody deaths inside its jail. Before 2022, the Defendant County had not had more than 12 in-custody deaths in any year since 2005. Seven of those in-custody deaths have occurred at the Cois M. Byrd Detention Center. The California Department of Justice has opened a civil rights investigation into the Riverside County Sheriff's Office.[6]

44.     On May 26, 2022, Michael Vasquez was found unresponsive in his jail cell just six (6) days after entering the Defendant County's custody at Cois M. Byrd Detention Center. The wrongful death case brought by Mr. Vasquez's family is ongoing. *Estate of Michael Vasquez, et al. v. County of Riverside, et al.*, 5:23-cv-00988-JGB-DTB

45.     On August 10, 2022, Richard Matus, Jr., age 29, was found unresponsive in his cell at Cois M. Byrd Detention Center. Mr. Matus was experiencing an ongoing medical emergency to which the jail staff failed to respond. In a wrongful death lawsuit filed by Mr. Matus' family, his family alleged the Defendant County's patterns and practices of not conducting proper welfare and safety checks on detainees caused his dire medical situation to go unnoticed. Litigation in the case is ongoing. *Estate of Richard Matus, Jr., et al v. County of Riverside, et al.*, 5:23-cv-00506-MEMF-SP (C.D. Cal.).

46.     On August 25, 2022, Abel Chacon, age 25, was found unresponsive in his cell at Cois M. Byrd Detention Center. The day prior, jail staff observed Mr. Chacon acting erratically and apparently under the influence of substances, but failed to summon medical care or conduct meaningful safety checks. The wrongful death case brought by his parents is ongoing. *Estate of Abel Chacon, et al. v. County of Riverside, et al.*, 5:23-cv-00990-JGB-SHK (C.D. Cal.).

---

[6] https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

47. On September 6, 2022, Kaushal Niroula, a transgender woman, was killed by her cellmate in the Cois M. Byrd Detention Center. In the subsequent lawsuit, Ms. Niroula's parents alleged that her cellmate was known to be a violent offender who was in jail for charges stemming from the sexual assault of a minor. Ms. Niroula was reportedly working as an informant for authorities to undercover illegal wiretapping in the county jails. In previous criminal proceedings, Ms. Niroula testified that she had been sexually assaulted while in jail and had contracted HIV as a result.[7] A wrongful death lawsuit brought by Ms. Niroula's parents against the County of Riverside is ongoing. *Estate of Kaushal Niroula, et al. v. County of Riverside, et al.,* 5:23-cv-1739 (C.D. Cal.).

48. On January 12, 2023, pretrial detainee Mark Spratt was killed in a violent attack by his cellmate at Cois M. Byrd Detention Center. *Estate of Mark Spratt, et al. v. County of Riverside, et al.* 5:23-cv-02096-JGB-DTB (C.D. Cal.).

49. In addition to Mr. Spratt and Ms. Niroula, Ulyses Munoz Ayala and Ruben Guzman were killed by other detainees inside Defendant County jails. Another pretrial detainee was brutally sexually assaulted by another detainee in the jail.

50. On November 1, 2024, the New York Times published an expose on the systemic issues inside Riverside County Jail.[8] Their investigative reporting revealed a number of serious, systemic issues within the Defendant County's operations of its jail. Sheriff's deputies working in the jail failed to adequately monitor detainees. The Sheriff's Department omitted pertinent facts about in-custody deaths in communications with the families and the public. Deputies and jail medical staff were found to ignore or improperly respond to serious health conditions such as schizoaffective disorder and depression.

---

[7] https://followourcourts.com/2023/08/riverside-sued-after-sex-offender-kills-inmate-murderer/
[8] https://www.nytimes.com/2024/11/01/us/california-jail-deaths-riverside-county.html

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

51.    According to the Times' reporting, a captain from the Sheriff's Office, Alyssa Vernal, warned staff members that they were failing to maintain basic jail operating standard. Capt. Vernal, who at the time was the head of the jail, wrote in an internal email: "It has become obvious we are not keeping house or following the rules we should be."[9]

52.    The Defendant County has at least a dozen open cases involving in-custody deaths.[10]

53.    As outlined in Plaintiff's operative complaint in the *Estate of Mark Spratt* case, The Defendant County had 15 in-custody deaths in 2023:

a.    On January 12, 2023, Mr. Spratt died in the aforementioned assault.

b.    On February 5, 2023, pretrial detainee Christian Viramontes was found unresponsive in his cell. An investigation into the manner and means of death remains pending.

c.    On February 6, 2023, pretrial detainee Jesus Rodriguez died in-custody due to injuries suffered during an arrest. The investigation into his death is pending.

d.    On February 21, 2023, pretrial detainee Christian Drye died in-custody at a County hospital due to injuries suffered during an arrest. An investigation into the manner and nature of his death remains pending.

e.    On March 11, 2023, pretrial detainee Asher Saunders was found unresponsive in his cell at Cois M. Byrd Detention Center. An investigation into the manner and means of death remains pending.

f.    On May 23, 2023, 16-year-old Ciara Sanchez was transported from a County Juvenile Facility to a local hospital where she eventually died. An investigation into the manner and means of death remains pending.

[9] https://www.nytimes.com/2024/11/01/us/california-jail-deaths-riverside-county.html
[10] https://www.nytimes.com/2024/11/01/us/california-jail-deaths-riverside-county.html

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

g.  On May 26, 2023, pretrial detainee Ruben Guzman died following an undisclosed incident at a County detention facility. On information and belief, Mr. Guzman received numerous threats to his life from other detainees and County employees while in jail. On information and belief, Mr. Guzman was found unresponsive in his holding cell with "global swelling on the head." An investigation into the manner and means of death remains pending.

h.  On July 5, 2023, pretrial detainee Astrid Johnson died in custody at a hospital due to a "medical condition." On information and belief, County jail medical staff and deputies failed to provide Ms. Johnson with adequate medical care.

i.  On August 14, 2023, pre-trial detainee Steven Crawford was found unresponsive in his cell. The investigation is ongoing.

j.  On August 27, 2023, pretrial detainee Tavae Stalks Walker was found unresponsive in his cell The investigation into his death is ongoing.

k.  On September 14, 2023, Damon Bietz was found unresponsive in the intake area following his booking into the jail.

l.  On September 18, 2023, Jess Flores, a pretrial detainee at Cois M. Byrd Detention Center was found unresponsive in his cell. On information and belief, County sheriff's deputies and medical staff failed to provide Mr. Flores with adequate medical care.

m.  On November 4, 2023, pretrial detainee Charles Giurbino was found unresponsive in his cell. The investigation is pending.

n.  On December 13, 2023, 44-year-old pretrial detainee Luke Hanchette was found unresponsive in his cell. The investigation is ongoing.

o.  Onn December 17, 2023, a 29-year-old female awaiting trial died in jail.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

54. These are long, ongoing issues inside Defendant County jails. The "2010-11 Grand Jury Report: Riverside County Detention Health Care Administration" found systemic failures in treatment, medication management, and record-keeping, among other issues.[11]

## DAMAGES

55. As a direct and proximate result of each of the Defendant's deliberate indifference to Decedent's obvious and serious medical needs and distress, Decedent and Plaintiff suffered injuries, emotional distress, fear, terror, anxiety, and a loss of sense of security, dignity, and pride as United States Citizens.

56. As a direct and proximate result of each of the Defendant's acts and/or omissions as set forth above, Plaintiffs sustained the following injuries and damages, past and future, among others:

a. Wrongful death of SHAUNDALE BOOKER JR.;

b. Hospital and medical expenses;

c. Coroner's fees, funeral and burial expenses;

d. Loss of familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support and loss of familial association;

e. Pain and Suffering, including emotional distress;

f. SHAUNDALE BOOKER JR.'s conscious pain and suffering, pursuant to federal civil rights law (Survival claims);

g. SHAUNDALE BOOKER JR.'s loss of life, pursuant to federal civil rights law;

h. Violation of constitutional rights; and

---

[11] https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2010-2011/11mentalhealth_detentionserv.pdf

i.   All damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§ 1983, 1988; and as otherwise allowed under California and United States statutes, codes, and common law.

57.   The conduct of Defendants DOES 1-50 was malicious, wanton, oppressive, and in reckless disregard of the rights and safety of SHAUNDALE BOOKER JR., Plaintiffs, and the public. Plaintiffs are therefore entitled to an award of punitive damages against Defendants DOES 1-50.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Fourteenth Amendment—Deliberate Indifference under 42 U.S.C. Section 1983)**
*(Plaintiff STARQUETTA METOYER as successor-in-interest to DECEDENT against Defendants CHAKMAKIAN and DOES 1-50)*

58.   Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

59.   By the actions and omissions described above, Defendants CHAKMAKIAN and DOES 1-50 violated 42 U.S.C. §1983, depriving Decedent of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution:

a.   The right to be free from deliberate indifference to Decedent's serious medical needs while in custody as secured by the Fourteenth Amendment.

60.   Defendants CHAKMAKIAN and DOES 1-50 subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein with reckless disregard for whether the rights and safety of Decedent would be violated by their acts and/or omissions.

61.   As a result of their misconduct, Defendants CHAKMAKIAN and DOES 1-50 are liable for Decedent's injuries and/or damages. Defendants CHAKMAKIAN and DOES 1-50's

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

1    conduct was egregious, outrageous and shocks the conscience; and/or were committed with

2    oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious

3    disregard for Decedent's safety, health and wellbeing. As such, Plaintiff is entitled to punitive

4    damages and penalties as allowable under 42 U.S.C. § 1983.

5         WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

6

7

8                          **SECOND CAUSE OF ACTION**
    **(Supervisory and Municipal Liability for Unconstitutional Custom or Police Practice – 42**
9                      **U.S.C. section 1983 (*Monell*))**
    *(Plaintiff, individually and as successor-in-interest to DECEDENT,  against Defendant COUNTY)*
10

11        62.    Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of

12   this Complaint.

13        63.    Plaintiff is informed and believes and therein alleges that the Defendants COUNTY

14   knew and/or reasonably should have known that Cois M. Byrd Detention Center staff, including

15   Riverside County Sheriff's Deputies and jail medical staff, exhibits a pattern and practice of

16   improper and inadequate medical treatment for detainees, including depriving them of necessary

17   medical treatment and medications, and exposing detainees to unreasonable risks while inside the

18   jail. Despite these incidents, none of the Cois M. Byrd Detention Center medical staff or employees

19   of the Cois M. Byrd Detention Center are found to be in violation of jail policy or disciplined or

20   retrained, even under the most questionable of circumstances.  Defendant's failure to discipline or

21   retrain medical staff and/or deputies is evidence of an official policy, entrenched in a deliberate

22   indifference for the safety, health, and wellbeing of detainees, and the resulting deaths and injuries

23   are a proximate result of DEFENDANT COUNTY's failure to properly supervise its medical staff,

24   sheriff's deputies, and thus ratify their unconstitutional conduct.  Plaintiff is informed, believe, and

25   therein allege that the instances previously discussed in the Monell facts section are examples of the

26

27

28

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

Defendants COUNTY's pattern and practice of condoning constitutionally inadequate medical care and exposing pre-trial detainees to unreasonable safety risks by failure to discipline, retrain, and supervise.

64.    Despite having such notice, Plaintiff is informed and believes and thereon alleges that Defendant COUNTY's policy-makers and/or high-ranking supervisors and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by said Defendant COUNTY medical staff and/or employees and/or deputies.

65.    Plaintiff is further informed and believes and thereon alleges that as a result of the deliberate indifference, recklessness, and/or conscious disregard of the misconduct by Defendant COUNTY and its employee, encouraged these medical staff and/or deputies to continue their course of misconduct, resulting in the violation of Decedent's and Plaintiffs' rights as alleged herein.

66.    The unconstitutional actions and/or omissions of Defendant COUNTY's employees, as well as other medical staff and/or deputies employed by or acting on behalf of Defendant COUNTY, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the Defendant COUNTY's jails. Stated in the alternative, these unconstitutional actions and/or omissions were directed, encouraged, allowed, and/or ratified by policy making-officials for Defendants COUNTY:

a.    To cover-up violations of constitutional rights by any or all of the following:

i.    by failing to properly investigate and/or evaluate complaints or incidents of improper or inadequate medical treatment;

ii.    by failing to properly investigate and/or evaluate incidents in which Riverside County Sheriff's Office deputies exposed pre-trial detainees to unreasonable safety risk;

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

iii.  by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful activity; and

iv.  by allowing, tolerating, and/or encouraging medical staff to make false statements, file false reports, and/or withhold or conceal material information.

b.  To allow, tolerate, and/or encourage a code of silence among Riverside County Sheriff's Office jail staff and medical staff whereby medical staff and/or employees do not provide adverse information against fellow employees;

c.  To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of misconduct by medical staff and employees;

d.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint, with deliberate indifference to the rights and safety of Plaintiffs and other detainees, and in the face of an obvious need for such policies, procedures, and training programs to prevent reoccurring and foreseeable violations of rights of the type described herein;

e.  To have in place trainings, policies and procedures that deprive inmates and detainees of prescribed medications despite knowledge of their necessity and the risks of injury/death involved with depriving and/or delaying the administration of medications.

67.  Defendants COUNTY and its employees failed to properly train, instruct, monitor, supervise, evaluate, investigate, and discipline all individual defendants, and other COUNTY jail personnel, with deliberate indifference to Plaintiff's and Decedent's constitutional rights, where

were thereby violated as described above.

68.     The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of Defendants COUNTY and its employees , were a moving force and/or a proximate cause of the deprivations of Plaintiffs' and Decedent's clearly-established and well-settled constitutional rights in violation of 42 U.S.C. §1983, as more fully set forth in Causes of Action 1-2, above.

69.     The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of Defendants COUNTY and its employees were a moving force and/or a proximate cause of the deprivations of Plaintiff's and Decedent's clearly-established and well-settled constitutional rights in violation of 42 U.S.C. §1983.

70.     Defendants subjected Plaintiff and Decedent to their wrongful conduct, depriving Plaintiff and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and Decedent and others would be violated by their acts and/or omissions.

71.     As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants COUNTY and its employee as described above, Plaintiff and Decedent sustained serious and permanent injuries and are entitled to damages, penalties, costs and attorneys' fees as set forth in this Complaint.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth

### THIRD CAUSE OF ACTION
**(Fourteenth Amendment – Failure to Protect under 42 U.S.C. Section 1983)**
*(Plaintiff as successor-in-interest to Decedent against Defendants DOES 1 -50)*

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

72.    Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

73.    Defendants DOES 1-50 assigned Decedent—who was 19 years old and had never been in jail—a cellmate who was classified as a high security risk due to prior infractions in jail and was in jail on a murder charge.

74.    By assigning Decedent a cellmate with such a propensity for violence and cruelty, Defendant DOES 1-50 put Decedent at substantial risk of suffering serious harm. Expectedly, Decedent was sexually assaulted by his cellmate. As a result of the sexual assault, Decedent contracted HIV. Decedent ultimately died of complications from HIV.

75.    Defendant DOES 1-50 could have avoided this risk all together by placing Decedent in a cell by himself or a cellmate who was not a high security risk. This was a reasonable available measure that would have abated the risk faced by Decedent. Defendant DOES 1-50, at a minimum, should have monitored Decedent's cell and quickly addressed any complaints after placing him with such a dangerous cellmate.

76.    Reasonable classification deputies in Defendant DOES 1-50's place would have known that it was objectively unreasonable to place such a violent detainee in a shared cell with Decedent.

77.    By placing Decedent in a cell with such a known danger, Defendant DOES 1-50 proximately caused Decedent to contract HIV and ultimately died.

78.    By the actions and omissions herein described, Defendants DOES 1-50 violated 42 U.S.C. §1983, depriving Decedent of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution:

a. The right to protect Decedent from unreasonably unsafe harms as secured by the Fourteenth Amendment.

79. Defendant DOES 1-50 subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein with reckless disregard for whether the rights and safety of Decedent would be violated by their acts and/or omissions.

80. As a result of their misconduct, Defendants DOES 1-50 are liable for Plaintiff's injuries and/or damages. Defendants DOES 1-50's conduct was egregious, outrageous, and shock the conscience; and/or were committed with oppression and/or malice; and/or were despicable and perpetrated with a willful and conscious disregard for Plaintiff's safety, health, and wellbeing. As such, Plaintiff is entitled to punitive damages and penalties as allowable under 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**(NEGLIGENCE & WRONGFUL DEATH)**
*(Plaintiff individually & as-successor-interest against Defendants CHAKMAKIAN, COUNTY, and DOES 1-50)*

81. Plaintiff hereby re-alleges and incorporates each and every paragraph in this Complaint as fully set forth here.

82. At all times, Defendants CHAKMAKIAN and DOES 1-50 owed Decedent the duty to act with due care in the execution and enforcement of any right, law, or legal obligations.

83. At all times, Defendants CHAKMAKIAN and DOES 1-50 owed Decedent the duty to act with reasonable care.

84. These general duties of reasonable care and due care owed to Decedent  by Defendants CHAKMAKIAN and DOES 1-50 but are not limited to the following specific obligations:

a. To protect Decedent from objectively unreasonable safety risks while housed as a pre-trial detainee at Cois M. Byrd Detention Center;

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

b. To refrain from abusing their authority granted them by law;

c. To refuse from violating Decedent's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law;

85. Defendants CHAKMAKIAN and DOES 1-50 through their acts and omissions, breached each and every one of the aforementioned duties owed to Decedent.

86. Defendant COUNTY is vicariously liable for the wrongful acts and omissions of its employees and agents pursuant to Cal Gov. Code section 815.2.

87. As a direct and proximate result of Defendants' negligence, Decedent sustained injuries and damages, and against each and every Defendant, is entitled to relief as set forth above.

88. WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**(Failure to Obtain Medical Care - Cal. Gov. Code § 845.6)**
(*Plaintiff individually & as-successor-interest against Defendants CHAKMAKIAN, COUNTY, and DOES 1-50)*

89. Plaintiff hereby re-alleges and incorporates each and every paragraph in this Complaint as fully set forth here.

90. At all times, Defendants CHAKMAKIAN and DOES 1-50 owed Decedent the duty obtain and/or take reasonable action to summon medical care per Cal. Gov. Code § 845.6.

91. At all times, Defendants CHAKMAKIAN and DOES 1-50 failed to take reasonable action or otherwise obtain medical treatment for Decedent.

92. Defendants CHAKMAKIAN and DOES 1-50 through their acts and omissions, breached each and every one of the aforementioned duties owed to Decedent.

93. Defendant COUNTY is vicariously liable for the wrongful acts and omissions of its employees and agents pursuant to Cal Gov. Code section 815.2.

94. As a direct and proximate result of Defendants' misconduct, Decedent sustained injuries and damages, and against each and every Defendant, is entitled to relief as set forth above.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## JURY DEMAND

95. Plaintiff hereby demands a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiffs pray for relief as follows:

1.      For general damages in a sum to be proven at trial;

2.      For wrongful death damages in a sum to be proven at trial;

3.      For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

4.      For punitive damages against Defendants CHAKMAKIAN and DOES 1-50 in a sum according to proof;

5.      All other damages, penalties, costs, interest, and attorney fees as allowed by 42 U.S.C. §§ 1983 and 1988,  and as otherwise may be allowed by California and/or federal law;

6.      For injunctive relief, including but not limited to, changing t

7.      For the cost of suit herein incurred; and

8.      For such other and further relief as the Court deems just and proper.


Dated:  December 27, 24            POINTER & BUELNA, LLP
                                   LAWYERS FOR THE PEOPLE

                                   /s/ Ty Clarke
                                   Adanté D. Pointer
                                   Patrick Buelna
                                   Ty Clarke
                                   Attorney for PLAINTIFF

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert Street, Ste 208, Oakland, CA 94607